**UNITED STATES of America, Appellee,**

v.

**Gardner S. DRAPE, Defendant-Appellant.**

**No. 81–1284.**

United States Court of Appeals,
First Circuit.

Argued Oct. 8, 1981.

Decided Jan. 14, 1982.

**24**

Burton E. Atkins, Cambridge, Mass., for appellant.

Robert D. Luskin, Atty., Dept. of Justice, Washington, D. C., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., and William C. Bryson, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before CAMPBELL and BOWNES, Circuit Judges, BONSAL,* Senior District Judge.

BONSAL, District Judge.

Appellant appeals from his conviction by a jury in the United States District Court for the District of Massachusetts of filing a false and fraudulent income tax return, 26 U.S.C. § 7206(1), and of filing a false claim against the United States, 18 U.S.C. § 287. On April 7, 1981 he was sentenced to six months' imprisonment and a fine of $5,000 on the tax count, and to one year's imprisonment and a fine of $5,000 on the false claim count. The sentencing judge suspended the prison sentences and the fines and appellant was placed on probation for a period of two years, conditioned on his making full payment of all taxes due within six months and on his performing, over the two-year probation period, at least 600 hours of "alternative work service."

In 1976 appellant received $215,678 from the sale of his stock in a family-owned fish processing business, Ell Vee Dee, Inc. In February 1977 appellant furnished his income figures for the calendar year 1976 to Theroux, a licensed public accountant and a social friend, as had been his practice for the past fifteen years. Theroux prepared appellant's 1976 income tax return, which showed a tax due of $81,109, and forwarded it to him on March 17, 1977. At about this time, appellant's brother-in-law recommended that appellant contact Garfinkle, an attorney, to review his tax situation. Garfinkle promoted a number of coal tax

shelters. Appellant and his wife visited Garfinkle at his office on March 27, and appellant showed him the tax return which had been prepared by Theroux. Garfinkle informed appellant that he could put him into a coal tax shelter which would result in appellant's not having to pay any taxes for 1976 and which might result in a refund for taxes paid by him in prior years. In the course of the meeting, appellant signed several documents presented to him by Garfinkle, including papers relating to Garfinkle's two coal tax shelter partnerships, SJ and G&O, a promissory note in blank, a power of attorney, and an offeree representative disclosure note. At trial, appellant testified that when he signed these documents there were no dates on them and he did not observe that some of them required notarization. However, several of the documents which were received at trial were dated December 15, 1976 and were notarized. Garfinkle informed appellant during the meeting that his accountant, Shocker, would prepare appellant's 1976 Federal and State income tax returns to reflect his new investment in the coal tax shelters. Appellant's wife testified at the trial that she questioned Garfinkle about the legality of the transactions and that he assured both of them that they were legal.

Two days after appellant's meeting with Garfinkle, appellant's wife sent Garfinkle a check for $30,000, which was supplemented by a later payment of $45,000 after the Drapes received a tax refund.

Shortly after his meeting with Garfinkle, appellant received from the tax shelter partnerships federal income tax forms K–1, which they were required by law to furnish to each investor. The K–1s reflected substantial net operating losses for 1976 and the headings stated that appellant had entered the partnerships in 1976.

At Garfinkle's request, the K–1 forms together with the tax return prepared by Theroux were forwarded to Shocker, who then prepared a revised 1976 tax return for appellant. The revised tax return showed that the losses of the partnerships in 1976

---

* Of the Southern District of New York, sitting by designation.

($514,194) more than offset appellant's taxable income. In the revised tax return, appellant claimed a refund of $58,542. Shocker also prepared a Form 1045 claiming a refund for all the federal income taxes paid by appellant from 1973 to 1975. On October 5, 1977 the completed documents were sent by Shocker to appellant, who signed them and filed them with the IRS. In November 1977, appellant and his wife received refunds totalling $114,000 for taxes paid by them from 1973 to 1976. They contacted Garfinkle, who directed them to send him an additional $45,000.

The testimony at trial indicated that although appellant had frequent contacts with Theroux during the spring, summer and fall of 1977, he never mentioned to Theroux his investment in the tax shelters, nor did he tell him that he had filed a revised tax return with resulting tax savings of over $100,000. Thereafter, appellant relied on Shocker to prepare his income tax returns for 1978 and 1979.

## DISCUSSION

Appellant makes two points on his appeal. He contends that the evidence was insufficient to establish beyond a reasonable doubt that he acted with the requisite knowledge or intent under either 26 U.S.C. § 7206(1) or 18 U.S.C. § 287 and that therefore the district court should have granted his motion for an acquittal. He asserts that he did not know that the documents which he signed had later been backdated; that he knew nothing about tax shelters and that he relied on Garfinkle's professional advice.

Appellant's second point on appeal is that the district court erred in failing to grant judicial immunity to Garfinkle so that he could testify at the trial and, presumably, confirm appellant's testimony.

█ We conclude that the evidence at the trial was sufficient for the district judge to submit the case to the jury and for the jury to find the appellant guilty. Appellant only saw Garfinkle on one occasion, on March 27, 1977. Two days later, on March 29, his wife sent Garfinkle a check for $30,000. The documents had been backdated to 1976 because 1976 was the last year in which the coal tax shelter using non-recourse promissory notes were recognized. The tax return prepared by Theroux showed a tax payable by appellant of $81,-109. The tax return prepared by Shocker through the use of the tax shelter showed a loss of $514,194 which appellant could carry back to 1973, 1974 and 1975 income. It is inconceivable that this raised no questions in appellant's mind. The record shows that although Shocker invited him to ask questions, he did not do so, nor did he question the backdating to 1976 of documents which he signed in 1977.

It is significant that throughout 1977 appellant met regularly with Theroux, his friend and financial adviser who had prepared his original 1976 return. He saw him monthly in connection with Theroux's auditing duties at the seafood company where appellant worked and they played golf occasionally. Appellant never mentioned to Theroux either that he had invested in tax shelters or that he had subsequently filed a 1976 tax return prepared by Shocker. Nor did he mention the substantial tax saving which he had obtained. Thereafter, appellant no longer used Theroux to prepare his returns, using Shocker for this purpose.

█ In considering the evidence, we must determine whether there is sufficient evidence from which reasonable persons could find appellant guilty beyond a reasonable doubt. *United States v. Leach*, 427 F.2d 1107, 1111 (1st Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 59 (1970). The evidence is to be evaluated in the light most favorable to the prosecution, with such inferences as may legitimately be drawn. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Indorato*, 628 F.2d 711, 719 (1st Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980).

█ In order to sustain a conviction under 28 U.S.C. § 7206(1), the evidence must show beyond a reasonable doubt that the appellant acted willfully, with knowledge that his return was not correct in

**26**

material respects. Appellant's signature on his return was sufficient to establish knowledge once it had been shown that the return was false. *United States v. Romanow*, 509 F.2d 26, 27 (1st Cir. 1974). For the purposes of 26 U.S.C. §§ 7201–7207, the term willfully "simply means a voluntary intentional violation of a known legal duty." *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976) (per curiam) (citations omitted). Intent may be established where a taxpayer "chooses to keep himself uninformed as to the full extent that [the return] is insufficient." *Katz v. United States*, 321 F.2d 7, 10 (1st Cir. 1963). We find that the evidence was sufficient for the jury to find that the appellant acted willfully.

Since the evidence showed that appellant filed a false tax return in order to obtain a tax refund to which he was not entitled, it follows that the signing and filing of the tax return constituted a false claim against the United States in violation of 18 U.S.C. § 287; *United States v. Miller*, 545 F.2d 1204, 1212 n.10 (9th Cir. 1976), *cert. denied*, 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977); *United States v. Lopez*, 420 F.2d 313 (2d Cir. 1969); *Kercher v. United States*, 409 F.2d 814 (8th Cir. 1969). Where a tax return is filed with the "guilty, actual knowledge that it was false," the jury may infer the requisite intent to defraud the government. *United States v. Rifen*, 577 F.2d 1111, 1113 (8th Cir. 1978).

Evidence indicating that appellant knew what he was doing includes the fact that he signed the return prepared by Shocker; that he had available to him copies of his subscriptions to the partnerships, all of which had been backdated in several places, and that he was sent copies of the K–1 forms which showed false dates for his entry into the partnerships. It taxes credulity that appellant, having met Garfinkle for the first time, would sign a succession of legal documents, including a blank promissory note, and agree to pay Garfinkle $30,000 in cash without knowing what he was doing. Appellant contends that he relied on the assurances of Garfinkle and Shocker that the deductions were legitimate. How-

ever, reliance here requires good faith and disclosure to Shocker of the actual date he executed the papers. *United States v. Smith*, 523 F.2d 771, 778 (5th Cir. 1975), *cert. denied*, 429 U.S. 817, 97 S.Ct. 59, 50 L.Ed.2d 76 (1976); *United States v. Cox*, 348 F.2d 294 (6th Cir. 1965). Appellant made no effort to inform or question Shocker about the backdating.

Appellant's second contention, that the court erred in refusing to grant judicial immunity to Garfinkle, needs little comment. At the time, Garfinkle was under indictment on a number of charges relating to tax shelters, including the specific transactions in which appellant was involved. The government was not prepared to have immunity granted because it would have jeopardized its case against Garfinkle. The district court properly concluded that the right to a fair trial was not denied appellant by the failure to grant immunity to Garfinkle. Both appellant and his wife testified, without objection, that Garfinkle had told them that the tax shelters were legal. The government did not comment upon Garfinkle's failure to testify, nor did it challenge directly appellant's testimony that Garfinkle had told him that the tax shelters were legal. Moreover, appellant's only support for his motion for a grant of immunity for Garfinkle was an affidavit from appellant's counsel averring that Garfinkle would confirm that he had told appellant and his wife that the tax shelters were legal. Appellant's counsel's affidavit was based on appellant's version of their conversation with Garfinkle and a statement by Garfinkle's attorney that, if compelled, Garfinkle would testify truthfully. This showing fails to support appellant's assertion that Garfinkle's evidence would have been exculpatory and was essential to his defense. Appellant did not have an absolute right to obtain immunity for Garfinkle since to do so would interfere with the exclusive authority of the prosecuting authorities to initiate criminal proceedings. *See United States v. Batchelder*, 442 U.S. 114, 124–25, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979); *Ullmann v. United States*, 350 U.S. 422, 431–34, 76 S.Ct. 497, 502–504, 100

L.Ed. 511 (1956). In *United States v. Davis*, 623 F.2d 188 (1st Cir. 1980) we held that a defendant has no general right to obtain immunity for a defense witness nor has the district court any general power to grant such immunity. We noted that the granting of such immunity is only appropriate if the right of a defendant to a fair trial has been denied. We found no violation of due process in *Davis*, nor do we find a violation here.

For the foregoing reasons, the judgment below is AFFIRMED.