UNITED STATES of America, Appellee,

v.

Anthony MONTEIRO, a/k/a Toy,
Defendant, Appellant.

No. 88–1465.

United States Court of Appeals,
First Circuit.

Heard Jan. 12, 1989.

Decided March 29, 1989.

Edward L. Gerstein, Providence, R.I., by Appointment of the Court, for appellant.

Craig N. Moore, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for U.S.

Before CAMPBELL, Chief Judge, SELYA, Circuit Judge, and PETTINE,* Senior District Judge.

PETTINE, Senior District Judge.

Defendant-appellant Anthony Monteiro appeals from his jury conviction in the United States District Court for the District of Rhode Island for conspiracy to defraud the United States, 18 U.S.C. Section 371, and aiding or assisting in the preparation and presentation of fraudulent documents under the internal revenue laws, 26 U.S.C. Section 7206(2). The charge against the defendant arose as a result of an investigation conducted by the Internal Revenue Service ("IRS") into illegal activities at Lincoln Greyhound Park in Lincoln, Rhode Island in late 1986. The subject of the investigation was "ten percenting", the practice by which one person cashes a winning pari-mutuel ticket in place of the actual winner, for which the person cashing the ticket is paid a percentage of the winnings. Appellant has raised several grounds for his appeal. None of appellant's contentions

---

* Of the District of Rhode Island, sitting by designation.

merit reversal and therefore we affirm his conviction.

## THE APPLICABLE INTERNAL REVENUE LAW

The Internal Revenue Code ("the Code") defines gross income as "all income from whatever source derived." 26 U.S.C. Section 61. Money won through wagering is to be included as gross income by the recipient for tax purposes.

Two provisions of the Code, applicable to gambling proceeds, are relevant to this case. First, in order to verify whether a taxpayer has reported all of his income (including gambling winnings) in a particular year, the IRS requires certain information from those who pay others. The Code requires that persons engaged in a trade or business and making payments to another person of $600 or more in any taxable year "shall render a true and accurate return to the Secretary, ... setting forth the amount of such gains, profits, and income, and the name and address of the recipient of such payment." 26 U.S.C. Section 6041(a). The Code further provides that "the name and address of the recipient of income shall be furnished upon demand of the person paying the income" when such action is necessary to make the provisions of this section effective. 26 U.S.C. Section 6041(c).

The Code requires that the income tax on certain kinds of income, including certain gambling winnings, be collected at its source. 26 U.S.C. Section 3402(q) delineates which gambling winnings are subject to withholding at the source. "Proceeds of more than $1,000 from ... a wagering transaction in a pari-mutuel pool with respect to horse races, dog races, or jai alai if the amount of such proceeds is at least 300 times as large as the amount wagered" are subject to withholding at the source. 26 U.S.C. Section 3402(q)(3)(C)(ii). The statute requires that: "Every person who is to receive a payment of winnings which are subject to withholding shall furnish the person making such payment a statement, made under the penalties of perjury, containing the name, address, and taxpayer identification number of the person receiving the payment and of each person entitled to any portion of such payment." 26 U.S.C. Section 3402(q)(6). The duties of the payor of such winnings are also set forth: "Every person ... making any payment of winnings which are subject to withholding shall deduct and withhold from such payment a tax in an amount equal to 20 percent of such payment." 26 U.S.C. Section 3402(q)(1).

In order to comply with these statutory requirements, Lincoln Greyhound Park has established a special window to be used for cashing tickets worth more than $600. This window is referred to in track parlance as "the IRS window" although there is no sign that so indicates. To cash a ticket paying more than $600, the holder must go to the IRS window and sign an IRS form, Form W-2G, listing his name and address. For a ticket paying more than $1,000 which has proceeds at least 300 times as large as the amount wagered, the recipient must complete the Form W-2G and the racetrack withholds 20% of the proceeds as income tax on the spot.

## "TEN PERCENTING"

"Ten percenting" is a practice by which actual winners of gambling proceeds avoid the reporting requirements of the Code, set forth above, and the tax liability for the amounts won. The result is accomplished in this way: the actual winner meets up with a person who is agreeable to cashing a winning ticket. This meeting might be solicited by either party or arranged by a third person. The winner passes the ticket to the other person who then presents the ticket at the IRS window. This person signs the IRS Form W-2G in his name, not reporting the identity of the actual winner. In this way, the IRS is not able to attribute the wagering income to the actual winner, who avoids the tax consequences of having won the money. The person who cashed the ticket then gives the proceeds to the actual winner and is given a fee for his efforts, often 10% of the amount won.

## THE FACTS

The indictment charged appellant with illegal acts on four specific dates: October

30, November 5, November 10, and November 19, 1986. The role that appellant was alleged to have played in the ten percenting scheme was that of broker, arranging for other individuals to cash the tickets of actual winners.

On October 30, 1986, IRS Special Agent John L. Toti, Jr., acting in an undercover capacity, obtained a winning ticket worth $649 at Lincoln Greyhound park. As Toti walked toward the IRS window, he was met by appellant, who asked Toti if he had "hit the trifecta" and how much it was worth. Toti told appellant that the ticket was worth $649. Appellant then asked whether Toti wanted someone to cash the ticket for him. When the agent said yes, the appellant motioned to a third person, later identified as James Rogers. Toti then gave the ticket to Rogers.

The appellant remained with Toti while Rogers went to cash the ticket. Toti asked if there would be 20% taken out of the winnings. Appellant answered "No, the only time they take out 20% it's got to pay over $1,000" and then "For 649, you've just got to sign your name." Appendix I, Transcript No. 1, p. 11. When Rogers returned he gave $649 to Toti. Rogers then left, telling appellant that he would see him upstairs. Agent Toti then gave appellant $64 and the appellant told him, "I'm usually right upstairs if, uh, you know, you get lucky." Transcript No. 1, p. 13.

Agent Toti was again at the race track on November 5, 1986, this time with Special Agent Fortune who had a winning ticket worth $610. The agents approached appellant and told him that they had a $610 ticket. Appellant asked "What day was that?" and Fortune stated that the ticket was from the previous week. Appellant asked Fortune if he could wait a few minutes. After a minute or so, Rogers approached the IRS agents. He and Fortune spoke, but Rogers refused to cash the ticket because he had already cashed a ticket for that race. He said that these winnings would be added to other winnings, putting Roger's total over $1000 and therefore 20% would be taken out. But Rogers found a replacement, Tony Calio, to cash the ticket for a fee of $60.

On November 10, 1986, Agent Fortune again approached appellant and asked for his help in cashing a ticket. The agent informed appellant that the ticket was worth $720. Appellant replied, "See him. See him." Fortune asked "Tony?" and appellant responded "Ya, he's alright." Fortune followed appellant's directions and Tony Calio cashed the ticket for him for a $70 fee.

Finally, on November 19, 1986, Agent Fortune and Agent Towne approached appellant at the race track with an $800 ticket. According to the transcript, the two agents and appellant spoke briefly. Although several recorded statements are unintelligible, it is clear that appellant called for Tony, who arrived and agreed to cash the ticket for Agent Towne.

## PROCEDURAL HISTORY

A grand jury indicted appellant for offenses involving his participation in the events related above. Count I charged that the appellant conspired with others to defraud the United States by impeding and defeating the lawful governmental function of the IRS in the ascertainment and collection of taxes. The four other counts charged the appellant with aiding and assisting in the preparation and presentation to the IRS of fraudulent documents on the four occasions outlined above. After trial by jury, appellant was convicted on all five counts. On May 2, 1988, the appellant was sentenced to a term of 6 months imprisonment on Counts I through IV inclusive, all four sentences to run concurrently, and a term of 18 months probation on Count V. A special assessment in the amount of $250 was imposed. The District Court released the defendant on bail pending this appeal.

## ISSUES RAISED

### The Jury Instructions

Appellant claims that the jury instructions given at his trial were erroneous because they did not require a determination of "whether the defendant knew he was

208

violating federal Internal Revenue law." Appellant's Brief, p. 8.

The defendant had requested a jury instruction defining "willfulness" as requiring "a voluntary, intentional violation of a known legal duty", in accordance with *United States v. Drape*, 668 F.2d 22, 26 (1st Cir.1982) either as an addition or in lieu of the willfulness charge throughout the instructions.

The trial judge refused to give the requested instruction. On the offense of conspiracy, he instructed the jury that:

> Before you may find that a Defendant, or any other person, has become a member of a conspiracy, the evidence in the case must show beyond a reasonable doubt that the conspiracy was knowingly formed, and that the Defendant, or other person who is claimed to have been a member, willfully participated in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy.

> To act or participate willfully means to act or participate voluntarily and intentionally, and with specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, to act or participate with the bad purpose either to disobey or to disregard the law. So if a Defendant, or any other person, with an understanding of the unlawful character of a plan, knowingly encourages, advises or assists, for the purpose of furthering the undertaking or scheme, he thereby becomes a willful participant—a conspirator.

The trial judge instructed the jury on the substantive offense of aiding or assisting in the filing of a false return thusly:

> Section 7206(2) of Title 26 provides in part that: "Any person who willfully aids or assists in the preparation or presentation under the Internal Revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to a material matter" shall be guilty of an offense against the United States.

Three essential elements are required to be proved in order to establish the offenses charged in Counts II, III, IV and V of the Indictment:

> First: The act or acts of aiding, or assisting in, or procuring, or counseling, or advising, the preparation, or the presentation of a false or fraudulent income tax document as charged;

> Second: Doing such act or acts with knowledge that the income tax document in question was false or fraudulent, as charged; and third: Doing such act or acts willfully.

> . . .

> An act is done willfully if done voluntarily and intentionally, and with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law.

Defendant's objections to the jury instructions were repeated after the instructions were given, as required by this Circuit. *Carrillo v. Sameit Westbulk*, 514 F.2d 1214, 1219 (1st Cir.1975).

With regard to the jury charge on conspiracy, defendant's preferred instruction, that "willfulness" required "a voluntary, intentional violation of a known legal duty" was not given verbatim. However, the instruction given did state the same elements, albeit in a different format. We find that the charge adequately explained the law.

The explanation of "willfulness" given by the trial judge in relation to the conspiracy and criminal tax offense charges is identical to the jury instruction reviewed by the Supreme Court in *United States v. Pomponio*, 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976). In *Pomponio*, respondents had been convicted of willfully filing false income tax returns in violation of 26 U.S.C. Section 7206(1). As the Supreme Court reported:

> A willful act was defined in the instructions as one done "voluntarily and intentionally and with the specific intent to do something which the law forbids, that is to say with [the] bad purpose either to disobey or to disregard the law."

429 U.S. at 11, 97 S.Ct. at 23. In reviewing the validity of these instructions, the Supreme Court stated "willfulness in this context simply means a voluntary, intentional violation of a known legal duty." *Id.* at 12, 97 S.Ct. at 23. It held that the trial judge, having given the instruction recited above, adequately instructed the jury on willfulness. *Id.* at 13, 97 S.Ct. at 24. It follows logically that the judge at appellant's trial, having given the identical instruction on willfulness, adequately instructed the jury.

The First Circuit in *United States v. Drape*, 668 F.2d 22, 26 (1982), cited *Pomponio* for the principle that the term "willfully" simply means a voluntary, intentional violation of a known legal duty for the purposes of 26 U.S.C. Sections 7201–7207. It did not mandate the use of any particular formulation in jury instructions for the courts of this circuit. Therefore, the trial judge was free to choose any formulation that comported with the principle set forth in *Pomponio*. That he chose to use the very formulation approved by the Supreme Court in *Pomponio* makes this issue simple for us. We need only follow the Supreme Court.

*Filing of the Tax Documents*

■ Appellant also challenges his conviction on the ground that "the evidence adduced at trial amply demonstrates that the filing requirement of [26 U.S.C.] Section 7206(2) was not satisfied." This allegation has two components: first, that there is a filing requirement in Section 7206(2) and second, that this requirement was not met here.

There is no filing requirement in the plain language of the text of Section 7206(2), so we look to judicial interpretation of the statute. We find no precedent addressing the specific issue of whether a false document must be *filed with the IRS* in order to find liable a person who assisted in its preparation. In *United States v. Habig*, 390 U.S. 222, 88 S.Ct. 926, 19 L.Ed. 2d 1055 (1968), the Supreme Court considered the dismissal of two counts of an indictment—Count 4 charging an attempt to evade taxes by filing a false return, 26 U.S.C. Section 7201, and Count 6 charging

under 26 U.S.C. Section 7206(2) aiding in the preparation and presentation of a false return. The question presented was the construction of 26 U.S.C. Section 6531, which limits the time when indictments may be filed for these tax offenses to six years "next after the commission of the offense." Appellees urged the Court to find that the period of limitations should run from the date when the returns were initially due to be filed rather than the date they were actually filed. In this context, the Court stated: "The offenses involved in Counts 4 and 6 are committed at the time the return is filed."

Appellant Monteiro relies on this statement and case law following it for the contention that the false or fraudulent tax document must be filed with the IRS in order to convict under Section 7206(2) of the United States Code. Many of the later cases are inapposite in that they deal with situations in which a return was actually filed with the IRS but do not state that filing was a necessary element for conviction. *See, e.g., Badaracco v. Commissioner of Internal Revenue*, 464 U.S. 386, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984); *United States v. Griffin*, 814 F.2d 806 (1st Cir. 1987).

Further complicating the matter is the fact that the situation presented for our review is unusual: the defendant aided the preparation of a fraudulent tax document which was submitted, not to the IRS directly, but to an intermediary (the racetrack) which had a legal duty to forward the information set forth in the document to the Internal Revenue Service. The issue of what it means to "file" a document in this situation appears to be one of first impression in this Circuit. Assuming arguendo that conviction under Section 7206(2) requires that the false or fraudulent document be filed, was this "filing requirement" met on the facts of this case? We think it was.

The evidence shows that appellant aided the preparation of a fraudulent tax document by arranging for certain people to cash winning tickets and sign the necessary Forms W–2G in place of the actual

winners. The prosecution put in evidence the Forms W–2G signed by Rogers and Calio, the people who worked with appellant. These forms were accepted by the racetrack as true and the information thereon was used to compile the daily records of the racetrack. In the normal course of business, the track would transfer this information to magnetic tape which it would send to the IRS. There was no evidence presented that the information contained on the four Forms W–2G at issue here was actually forwarded to the IRS or that the IRS received the information in this way.

Although, on the evidence provided, we do not know whether the IRS ever received the fraudulent information in the normal course, we find this lacuna irrelevant to our decision because we do not equate "filing" with "receipt by the IRS" in a situation involving an intermediary. Here, there were two actors each having a separate legal duty to provide certain information for use by the IRS. The first actor was the actual winner of $600 or more who was under a duty to provide his name to the racetrack, pursuant to 26 U.S.C. Section 6041(a). The racetrack was under a separate duty to provide a complete list of all winners of income greater than $600 to the IRS, per 26 U.S.C. Section 6041(c). The actions of appellant allowed the actual winner to avoid the duty to file an accurate Form W–2G, violating Section 6041(a). Persons other than the actual winners claimed to be receiving the amounts won. Appellant, Rogers, and Calio had done all that was possible for them to do to perpetrate this fraud. No further steps were necessary because the payor of the income (here, the racetrack) was to transmit the information by filing a report of payments with the IRS. Appellant's liability for aiding the preparation of fraudulent tax documents accrued at this point—when the fraudulent documents were submitted to the intermediary with the intention that the racetrack accept as true the information provided. The action or inaction of the intermediary can be of no consequence to appellant's liability.

Appellant relies on *United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir.1983), for its argument that 26 U.S.C. Section 7206(2) has a filing requirement. Durst, an appellant there, had been convicted of violating 26 U.S.C. Section 7206(2) by preparing a tax return which showed a deduction for the taxpayer's repurchase of a tax shelter package in 1978, although Durst knew that the taxpayer had not repurchased the package in that year. Unbeknownst to Durst, the taxpayer was cooperating with an IRS investigation into the tax shelter program which Durst was promoting. Thus, the Circuit Court was presented with a situation in which appellant had submitted a false or fraudulent document to an entity (the taxpayer) who had a duty to submit information contained in the document to the IRS. The taxpayer did not file the return with the IRS; in fact, "[i]t was never intended to represent [the taxpayer's] true return with the IRS." *Id.* at 1429. The government contended that an offense under Section 7206(2) may be committed without the filing of a document, but the Ninth Circuit disagreed. We do not decide whether the case law compels the conclusion reached by the Ninth Circuit that "the filing of a return is in fact an element of a section 7206(2) violation." *Id.* We find that if there is a filing requirement, it is met on the facts of the case before us.

Appellant attempts to bolster the argument that he is not guilty of a Section 7206(2) violation with his assertion that the IRS never relied on or intended to rely upon these forms for anything other than evidence in this and related proceedings. Reliance by the government on the fraudulent information provided cannot be an element of a criminal tax offense; if it was, no undercover operation in this area would be effective because government knowledge that the information provided was false would preclude a conviction.

■ We hold that the offense of aiding or assisting the preparation or presentation of a false or fraudulent tax document is certainly complete when the document has been presented to a person or entity which

is required by law to transmit the information thereon to the IRS.

*Sufficiency of the Evidence*

Appellant argues that the evidence presented was not sufficient in establishing first, that defendant acted "willfully" and second, that the returns were "filed" to sustain the conviction.

In reviewing a conviction challenged on the basis of the sufficiency of the evidence, the court must determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 309, 99 S.Ct. 2781, 2783, 61 L.Ed.2d 560 (1979) (emphasis in original). Having reviewed the record with this standard in mind, we find appellant's challenge to be without merit.

■ As to the first issue, we conclude that reasonable persons could find beyond a reasonable doubt, on the evidence presented at trial, that defendant's actions were willful. Agent Toti testified that defendant explained the relevant tax law to him. The recording of the conversation between Toti and appellant verified that appellant described the various procedures accurately and in some detail, e.g., for winnings less than $1002, "you've just got to sign your name", whereas for amounts over $1002, 20% is taken out.[1] Although no evidence was presented that appellant himself had signed a Form W–2G and, in fact, the prosecution admitted that investigation of the records for 1986 revealed no such evidence, the evidence clearly indicated that he was acting in concert with persons who did sign Forms W–2G, at his behest. The evidence of defendant's knowledge that the law forbids aiding the preparation of false or fraudulent tax documents was circumstantial, as the prosecu-

tion admits. But circumstantial evidence of willfulness can be sufficient to sustain a jury verdict. *See United States v. Moon,* 718 F.2d 1210, 1222 (2d Cir.1983). In other ten percenting cases, courts have held circumstantial evidence, such as evidence that the track announced in posters or programs that it was required to send the names of the actual winners of over $600 to the Internal Revenue Service, sufficient to allow a jury to find the "willfulness" required for a criminal tax offense. *United States v. Walsh,* 544 F.2d 156, 160 (4th Cir.1976); *United States v. Rizzo,* 313 F.Supp. 734, 736 (D.Del.1970).

As to the second issue, we discussed, *supra,* the definition of "filing" to be applied in this situation. It is clear that the returns at issue were "filed" as we interpret that term in this particular context.

*Disclosure of Exculpatory Evidence*

■ Appellant asserts that the prosecution failed to disclose evidence that was material and favorable to him until after trial. Specifically, he alleges "the prosecutor did not disclose to the defense until after trial that it had reviewed the records of Lincoln Greyhound Park for the entire year of 1986. This governmental review disclosed that on not a single occasion did the defendant sign a form W–2G or otherwise cash a ticket with net winnings in excess of $600."

In appellant's view, this evidence is relevant to the issue of whether the appellant had sufficient knowledge of Internal Revenue law to satisfy the requirement of "willfulness" necessary to sustain a conviction under 18 U.S.C. Section 371 and 26 U.S.C. Section 7206(2). Further, the evidence would support his assertion that he was unaware of the existence, nature, and substance of Form W–2G.

The Supreme Court has held that due process does not require a prosecutor to

---

1. This explanation is precisely correct in the circumstance of the typical $2 bet. The withholding requirement set forth in 26 U.S.C. Section 3402(q) applies to "proceeds of more than $1,000 from ... a wagering transaction." Thus, a ticket redeemable for more than $1,002 reimburses the winner for the $2 wagered and has proceeds which meet the statutory minimum for withholding. Although none of the tickets at issue here paid over $1,002, the fact that appellant knew the specific categories is some evidence of his knowledge of the tax law applicable to gambling winnings.

**212**

disclose evidence unless the evidence is "material." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). The standard of "materiality" to be applied in determining whether a conviction should be reversed was set in *United States v. Bagley:*

> Consistent with "our overriding concern with the justice of the finding of guilt," a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial" (citation omitted).

473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985).

Appellant has not persuaded this court that the evidence in question here even remotely approaches the level of significance contemplated in *Bagley.* The prosecution's contention that appellant knew the relevant law was not premised on defendant having actually cashed tickets and signed Form W–2G himself. In fact, the government stipulated before the jury that appellant's name did not appear on any of the Forms W–2G or other documents in evidence. The fact that the government had conducted a survey of the track records for one year, 1986, and found that defendant never signed a Form W–2G shows more of the same. Using the modus operandi proven by the government, it was not necessary for appellant to sign the Form W–2G himself. The trial judge concluded:

> I'm satisfied, Mr. Monteiro, that on the evidence that you were one of ... the general managers of this operation at the racetrack which would explain a number of things, not the least of which is that there was no record that you cashed a ticket there because you had other people do it for you.

In light of the evidence presented and the government's stipulation that appellant's name appeared on none of the documents, the fact that the review of the 1986 track records showed that appellant did not sign his name to a Form W–2G in that year is not significant, and suppression of that fact is not a fatal flaw in appellant's conviction.

*Jury Selection*

Appellant withdrew the argument presented in his brief that a certain juror should have been excused for cause based on exposure to pre-trial publicity and gave notice that he would assert at oral argument an alternate basis on which the juror should have been excused for cause. Appellant did not address this issue in oral argument, so there is nothing for us to consider here.

## CONCLUSION

In sum, we have considered each of appellant's arguments challenging his conviction and find them without merit.

*Affirmed.*