**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-4433**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

      v.

DOROTHY LEE ANDERSON,

              Defendant - Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Columbia.  Joseph F. Anderson, Jr., District
Judge.  (3:11-cr-00837-JFA-1)

Argued:  May 17, 2013                  Decided:  July 10, 2013

Before WILKINSON, DUNCAN, and WYNN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Wilkinson wrote the
majority opinion, in which Judge Duncan joined.  Judge Wynn
wrote a dissenting opinion.

**ARGUED:** Jonathan McKey Milling, MILLING LAW FIRM, LLC, Columbia,
South Carolina, for Appellant.  Jamie L. Schoen, OFFICE OF THE
UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.
**ON BRIEF:** William N. Nettles, United States Attorney, Winston D.
Holliday, Jr., Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WILKINSON, Circuit Judge:

Defendant Dorothy Lee Anderson was convicted of twenty counts of various crimes for using stolen identities to fraudulently obtain federal income tax refunds. Anderson now challenges the jury's guilty verdict on four of those counts, as well as the district court's application of two sentencing enhancements. However, finding sufficient evidence to support the convictions and concluding that the district court did not err in applying either of the enhancements, we affirm.

I.

In late 2007, Anderson took steps to establish a tax preparation business under the name of "DL Anderson Tax Service." She applied to the IRS for authorization to electronically file tax returns and was issued an Electronic Filing Identification Number ("EFIN") for her business and a Preparer's Tax Identification Number ("PTIN") for herself as a paid tax preparer. Anderson used the EFIN and PTIN throughout 2008 to submit returns for the 2007 tax year.

In February 2009, the IRS interviewed Anderson as part of an investigation into certain returns filed by her business putatively on behalf of paid clients. Each return in question indicated that the refund due was to be deposited into one of several bank accounts controlled by Anderson, and each named

2

Anderson as a third-party designee authorized to receive private tax information relating to the filer. When asked about these returns, Anderson stated that her employee, Tamika Davis, prepared them, but an IRS agent assigned to the case later testified that he could find "no evidence of an existence of that person." J.A. 55.

On September 21, 2011, a federal grand jury in the District of South Carolina charged Anderson in a twenty-one count superseding indictment with nineteen counts of submitting false, fictitious, or fraudulent claims against the United States, in violation of 18 U.S.C. § 287; one count of embezzling public money or property, in violation of 18 U.S.C. § 641; and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. The indictment alleged that Anderson stole the identities of nineteen individuals and used their personal information to file fraudulent tax returns, with refund payments routed to accounts under her control.

At trial, the government presented testimony by fourteen witnesses whose names appeared on tax returns corresponding to Counts 1, 2, 4-8, 11-14, and 16-18 of the indictment, each filed using Anderson's EFIN and PTIN. The witnesses testified that they did not authorize Anderson to prepare the returns and that they did not receive any refund payments in connection with the

filed returns. Moreover, they indicated that much of the personal information listed on the returns was incorrect.

The government also called seven other witnesses, among them Ronald Cooley, President and CEO of Brookland Federal Credit Union ("Brookland"); Russell Sciandra, an IRS Special Agent; and Tracy Trivison, General Manager of Receivables Management Corporation ("RMC"), Anderson's former employer. Cooley testified that Anderson controlled multiple accounts at Brookland and identified certain deposits made by the United States Treasury into those accounts. Sciandra linked the Treasury deposit amounts to refunds claimed on tax returns filed using Anderson's EFIN and PTIN. And Trivison testified that, while working for RMC, Anderson had access to the names, addresses, social security numbers, and dates of birth of some of the individuals whose tax returns were filed using Anderson's EFIN and PTIN.

The jury found Anderson guilty on twenty of the twenty-one counts charged in the indictment. She was acquitted only on Count 10, a false claim charge linked to a tax return for which the refund was deposited into a separate bank account not referenced on any of the eighteen other returns. The individual whose name appeared on the return associated with Count 10 did not testify at trial.

4

In calculating Anderson's Guidelines sentencing range, the Presentence Investigation Report ("PSR") applied two enhancements now at issue in this appeal, one for the number of victims involved and another for the amount of loss implicated. The PSR reported that there were nineteen victims of Anderson's crimes, triggering a two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(2), and that the intended loss amount was $437,822, triggering a fourteen-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(H). After accounting for these enhancements, the PSR arrived at a final Guidelines range of 65 to 75 months' imprisonment.

Counsel for Anderson raised ten objections to the PSR, none of which challenged the application of the aforementioned sentencing enhancements and most of which were resolved prior to sentencing. Anderson herself also filed a pro se objection challenging the "entire" PSR, but her statement was directed primarily at the jury's finding of guilt and not at the proposed Guidelines range. She did not raise any specific objection to either enhancement. At the sentencing hearing, the district court denied Anderson's request for a variance, resolved the outstanding PSR objections -- none of which affected the advisory Guidelines range -- and sentenced Anderson to 75 months of incarceration. This appeal followed.

5

II.

Anderson first challenges the sufficiency of the evidence supporting the jury's guilty verdict on four of her eighteen convictions for submitting false or fraudulent claims against the United States. Although Anderson preserved her objection on this issue, we note at the outset that the standard for overturning a jury verdict is a very difficult one to meet: a conviction will be reversed for insufficient evidence "only if no reasonable jury could have concluded beyond a reasonable doubt" that the defendant committed the charged crime. United States v. Sayles, 296 F.3d 219, 223 n.1 (4th Cir. 2002). On the other hand, if "substantial evidence" -- that is, direct or circumstantial evidence "that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt" -- supports a verdict, it will be upheld. United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc); see also United States v. Stewart, 256 F.3d 231, 249 (4th Cir. 2001). Put otherwise, only when the prosecution's failure to prove its case is "clear" will the defendant prevail in challenging a jury's guilty verdict. Burks v. United States, 437 U.S. 1, 17 (1978).

Anderson specifically attacks her convictions on Counts 3, 9, 15, and 19, four counts for which the government did not present live witness testimony as to the fraudulent nature of

6

the corresponding tax returns. Notwithstanding the jury's guilty verdict, Anderson asserts that she is entitled to a judgment of acquittal because "there is a total absence of evidence" with respect to the challenged counts. Appellant's Reply Br. 3. But her argument is unavailing because the prosecution did present substantial evidence of her guilt, although that evidence was not in the form of direct witness testimony about the four specific returns related to those counts.

It is well settled that the government is not required to come forward with any particular form of evidence and may proffer direct or circumstantial evidence to make its case. See Stewart, 256 F.3d at 249 (citing Glasser v. United States, 315 U.S. 60, 80 (1942)). Here, the prosecution presented significant circumstantial evidence demonstrating that Anderson was guilty on Counts 3, 9, 15, and 19, and we therefore affirm her convictions.

The tax returns associated with the four challenged counts were remarkably similar to those associated with the fourteen other counts on which Anderson was also convicted. All eighteen returns contained Anderson's EFIN and PTIN -- indicating that she or someone acting at her instruction prepared the returns -- and each return directed the IRS to deposit the refund due into one of two accounts controlled by Anderson. As discussed above, the government presented direct testimonial evidence that

7

fourteen of these eighteen returns contained false information and were filed without the authorization of the individuals named therein, none of whom actually received the associated refunds. That the four other returns contained the same EFIN, PTIN, and bank account information as these fourteen is ample circumstantial evidence from which a reasonable jury could have concluded -- and, here, did conclude -- that Anderson was guilty beyond a reasonable doubt on Counts 3, 9, 15, and 19.

We need not resolve the question of precisely how many returns would, in some other case, be necessary to establish this pattern of fraud. Rather, we need hold only that the pattern established by direct testimony concerning the fourteen returns unchallenged on appeal was sufficient circumstantial evidence to justify the jury's conclusion that the four other remarkably similar returns were also false or fraudulent. Faced with the government's evidence, Anderson offered no satisfactory explanation to the jury as to why those remaining returns were not fraudulent. She was, of course, under no obligation to offer such an explanation, but her failure to do so raised the risk that the jury would accept the government's evidence. See United States v. Echeverri-Jaramillo, 777 F.2d 933, 938 (4th Cir. 1985) (quoting McGautha v. California, 402 U.S. 183, 215 (1971)).

It is worth noting that the jury acquitted Anderson on Count 10, the only count for which the corresponding tax return

directed the refund to a bank account not listed on any of the eighteen other returns. The acquittal indicates that the jury was not asleep at the wheel in this case but actually did consider whether the evidence presented by the prosecution -- to wit, the testimonial evidence and the marked resemblances among the eighteen tax returns -- established Anderson's guilt on each individual count. The jury was convinced by the inculpatory evidence with respect to eighteen of the charged counts, but not by the evidence with respect to Count 10. This outcome is not altogether surprising given that the single return in Count 10 deviated from the pattern displayed by the eighteen other returns. That the jury apparently recognized and reacted to a deviation from the pattern only fortifies the conclusion that the striking conformity to that pattern of the four convictions at issue here provided a sound basis for the jury's verdict.

### III.

Next, Anderson challenges the district court's application of a two-level sentencing enhancement pursuant to U.S.S.G. § 2B1.1(b)(2)(A) for the number of victims -- nineteen -- involved in this case. As an initial matter, we note that neither Anderson nor her attorney objected to the PSR's application of this enhancement. Therefore, our review is for plain error.

Under the plain-error standard, a defendant "must establish that the district court erred, that the error was plain, and that it affected [her] substantial rights." United States v. Robinson, 627 F.3d 941, 954 (4th Cir. 2010) (internal quotation marks and alterations omitted) (citing United States v. Olano, 507 U.S. 725, 734 (1993)). And even if a defendant meets this heavy burden, an appellate court has "discretion whether to recognize the error, and should not do so unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Hargrove, 625 F.3d 170, 184 (4th Cir. 2010) (internal quotation marks omitted). Here, the district court did not commit error -- much less plain error -- and we therefore affirm its application of the number-of-victims enhancement.

Pursuant to U.S.S.G. § 2B1.1(b)(2)(A), a defendant is subject to a two-level sentencing enhancement if convicted of a theft or fraud offense involving ten or more victims. The commentary to § 2B1.1 generally defines the term "victim" as "(A) any person who sustained any part of the actual loss determined under subsection (b)(1); or (B) any individual who sustained bodily injury as a result of the offense." U.S.S.G. § 2B1.1 cmt. n.1. However, if an offense "involve[s] means of identification," that definition is expanded to include "any

10

individual whose means of identification was used unlawfully or without authority." Id. cmt. n.4(E).

Anderson does not dispute that her conviction brings her within the scope of § 2B1.1(b)(2)(A) standing alone, given that she was convicted of using the means of identification of eighteen different individuals to submit fraudulent tax returns. See Appellant's Br. 18. She argues, however, that the number-of-victims enhancement does not apply to her because that enhancement is based on a "specific offense characteristic," U.S.S.G. § 2B1.1(b)(1), and the commentary to a separate Guidelines provision for aggravated identity theft, U.S.S.G. § 2B1.6 cmt. n.2, instructs a court to "not apply any specific offense characteristic for the . . . use of a means of identification when determining the sentence for the underlying offense" if the defendant is also being sentenced for aggravated identity theft -- as Anderson was here. The identity theft sentence, so Anderson's argument goes, is meant to account for the unlawful use of a means of identification, such that application of the expanded definition of "victim" in § 2B1.1(b)(2)(A) would "double count" the use of the stolen identities for sentencing purposes. See Appellant's Br. 18-19.

We decline to embrace Anderson's reasoning. Like all of our sister circuits to have considered the issue, we conclude instead that § 2B1.6 does not preclude a district court from

11

imposing a number-of-victims enhancement in conjunction with a sentence for aggravated identity theft. See United States v. Lyles, 2012 WL 5907483, at *5 (6th Cir. 2012) (unpublished); United States v. Manatau, 647 F.3d 1048, 1057 n.4 (10th Cir. 2011); United States v. Yummi, 408 F. App'x 537, 541 (3d Cir. 2010) (unpublished); see also United States v. Jenkins-Watts, 574 F.3d 950, 961-62 (8th Cir. 2009).

Comment 2 to the aggravated identity theft Guidelines provision instructs a district court to refrain from applying an enhancement only if it is triggered by a "specific offense characteristic for the transfer, possession, or use of a means of identification." U.S.S.G. § 2B1.6 cmt. n.2. The most natural reading of the comment limits its application to enhancements linked to the nature of the offense, such as the two-level enhancement found in § 2B1.1(b)(11)(C) that applies if an offense involved "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification." Applying this "means of identification" enhancement from § 2B1.1(b)(11)(C) in conjunction with an aggravated identity theft sentence would, in fact, augment a defendant's sentence twice for the same substantive conduct -- use of a means of identification. Thus, per Comment 2, an enhancement under § 2B1.1(b)(11)(C) cannot be imposed alongside a sentence for aggravated identity theft.

12

By contrast, the § 2B1.1(b)(2)(A) enhancement at issue here looks only to the number of victims of the offense. That the term "victim" is defined to include the individuals whose means of identification were used in the crime does not transform § 2B1.1(b)(2)(A) into an enhancement triggered by a "specific offense characteristic for the transfer, possession, or use of a means of identification." As the Sixth Circuit has explained, the number-of-victims enhancement "punishes the impact of the crime, not the transfer, possession, or use of a means of identification." Lyles, 2012 WL 5907483, at *5. As such, the instructions contained in Comment 2 do not bar the application of that enhancement here.

IV.

Finally, Anderson challenges the fourteen-level sentencing enhancement triggered by the PSR's conclusion that her intended loss was $437,822. As with the number-of-victims enhancement, our review here is for plain error because neither Anderson nor her attorney objected to the PSR's calculation of the loss amount or to the district court's subsequent application of the corresponding enhancement. After reviewing Anderson's contentions, we find no plain error in the district court's sentencing decision on this point.

13

Although the PSR states that "[t]he facts of the case revealed the actual loss amount was $437,822.00," J.A. 470, Anderson contends that she is subject to an enhancement only for the loss of $65,911 that was found by a jury, see Appellant's Br. 24-25. However, it is clear that a district court may consider facts not found by a jury when issuing a sentence somewhere between the statutory minimum and maximum. See Harris v. United States, 536 U.S. 545, 566 (2002).[1] Here, the district judge made a factual finding -- based on the PSR -- that Anderson's intended loss amount was $437,822. That finding triggered an enhancement but did not take Anderson's sentence beyond the statutory maximum for her offenses. A sentencing judge must remain free to make run-of-the-mill factual findings underlying advisory Guidelines enhancements without eliciting constitutional concerns. That is all the judge did here, and the amount-of-loss enhancement was thus permissible.

Anderson next complains that, even if the trial judge was free to impose an enhancement based on facts not found by a jury, the government failed to provide sufficient evidence to

---

[1] Anderson asks us to vacate her sentence and remand the matter in light of the Supreme Court's grant of certiorari in United States v. Alleyne, 457 F. App'x 348 (4th Cir. 2011) (unpublished), cert. granted, 133 S. Ct. 420 (2012) (No. 11-9335). However, Alleyne involves the application of mandatory minimum sentences and is not relevant to the advisory Guidelines enhancement dispute here.

14

support the PSR's loss calculation of $437,822. Appellant's Br. 21. But we must reject Anderson's contention at the outset, because the government is not required to present evidence demonstrating the accuracy of facts in a PSR. See United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990). When challenging a PSR, a defendant "has an affirmative duty to make a showing that the information in the [document] is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate." Id. "Without an affirmative showing the information is inaccurate, the court is 'free to adopt the findings of the [PSR] without more specific inquiry or explanation.'" Id. (quoting United States v. Mueller, 902 F.2d 336, 346 (5th Cir. 1990)). Here, Anderson failed to make an affirmative showing that the loss calculation in the PSR was inaccurate or unreliable, and her objection to that calculation now must therefore fail.

Moreover, Anderson's argument misses the mark for a separate reason: the record does contain unrebutted evidence supporting the PSR's loss calculation. We note as an initial matter that, for Guidelines sentencing purposes, loss amount is not limited to the actual loss resulting from the charged conduct. Rather, the Guidelines indicate that the defendant's intended loss is the relevant figure when it exceeds actual loss, U.S.S.G. § 2B1.1 cmt. n.3(A), and both charged and

15

uncharged conduct may be considered, see U.S.S.G. § 1B1.3(a) & cmt. background. Moreover, a sentencing court need not precisely calculate intended loss, as the Guidelines require only "a reasonable estimate of the loss." U.S.S.G. § 2B1.1 cmt. n.3(C).

At trial, the government introduced certain bank statements from Anderson's accounts at Brookland, but was not permitted to introduce evidence that the Treasury deposited $333,403 worth of tax refunds into those accounts in 2008. The district judge ruled that the government could introduce evidence of loss associated with only the nineteen counts charged in this case. Thus, the jury was not permitted to review the $333,403 figure, although it is referenced in the record.[2]

It is well settled, however, that the ordinary rules of evidence do not apply in the sentencing phase of a criminal proceeding. See 18 U.S.C. § 3661; Fed. R. Evid. 1101(d)(3). Thus, the fact that indications of the total loss amount were not before the jury did not bar the PSR or the trial judge from using such evidence to determine Anderson's sentence. Of course, in the absence of any objection, the government had no

---

[2] The record also indicates that the IRS was "actually able to identify some of the refunds as fraudulent and stop them before they went out." J.A. 274. Therefore, it is unremarkable that Anderson's intended loss amount ($437,822) exceeds the amount of fraudulent tax refund payments actually deposited into her accounts ($333,403).

obligation to affirmatively establish the total loss amount stated in the PSR in the first place. See Terry, 916 F.2d at 162. However, the ample evidentiary support for that loss calculation only bolsters our conclusion that the district court did not err -- much less commit plain error -- when it applied the fourteen-level sentencing enhancement in this case.

V.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

WYNN, Circuit Judge, dissenting:

To prove a violation 18 U.S.C. § 287, the government bears the burden of establishing "two elements: 1) making or presenting a claim to any agency of the United States 2) knowing such claim to be false, fictitious, or fraudulent." United States v. Ewing, 957 F.2d 115, 119 (4th Cir. 1992). There is no dispute that filing a tax return for a refund constitutes "presenting a claim" to the IRS. The key issue here is whether the government presented sufficient evidence to show that each of the tax returns in this matter supporting an individual count under 18 U.S.C. § 287 was "false, fictitious, or fraudulent."

For the fourteen returns supporting Counts 1, 2, 4-8, 11-14, and 16-18, the government presented not only the returns but also the persons named on those returns, who testified that the returns were unauthorized and or inaccurate. Accordingly, I agree with the majority that the government met its burden of proof under 18 U.S.C. § 287 as to those fourteen counts.

As to Counts 3, 9, 15, and 19, however, the government presented only the four returns. The government essentially argued that because these naked returns looked just like the fourteen returns clothed by witnesses' testimonies, they were dressed in the requisite criminality. The majority apparently agreed, stating that the four naked returns were "remarkably similar" to the returns clothed by witnesses' testimonies.

18

Supra 7. But the only similarities between the naked and clothed returns—the tax preparer information (PTIN and EFIN) and refund destination—show nothing inherently false or fraudulent about the four naked returns.

Moreover, the use of the PTIN and EFIN shows only that DL Anderson prepared the return, not that this preparation was unauthorized. Similarly, the use of the routing number shows only that the refund was to be deposited into an account controlled by Anderson, not that this direction was unsanctioned. Nor is it unlawful to direct a refund to a tax preparer or another third party. Put simply, the tax preparer information (PTIN and EFIN) and refund destination appear on all returns filed by tax preparers. Indeed, based on this evidence, the returns were just as likely honest and accurate as they were fraudulent and false.

Further, merely associating these naked returns with the fourteen other returns was an insufficient basis for convicting Anderson on Counts 3, 9, 15, and 19. A pattern of conduct may be used to connect a crime to a particular individual or establish intent. Here, however, the pattern is not being used to infer that it was Anderson who filed the four returns, but that those returns were false in the first place—that there was, in fact, a crime. See United States v. Drape, 668 F.2d 22, 26 (1st Cir. 1982) ("Appellant's signature on his [tax] return was

19

sufficient to establish knowledge <u>once it had been shown that the return was false</u>.") (emphasis added). Yet this cannot be, as "[t]he first presumption is that a defendant is innocent unless and until the government proves beyond a reasonable doubt each element of the offense charged." <u>Clark v. Arizona</u>, 548 U.S. 735, 766 (2006). Drawing this inference belies the bedrock principle of criminal law that the government bears the burden of proving each element of an offense. <u>In re Winship</u>, 397 U.S. 358, 364 ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

To be sure, the government need not have presented direct witness testimony to demonstrate that the tax returns associated with Counts 3, 9, 15, and 19 were false or fraudulent; nonetheless, some evidence was required to carry the government's burden to prove this element—and none was presented. Because the evidence at trial was insufficient for any rational fact-finder to conclude beyond a reasonable doubt that these four naked returns were false or fraudulent, I respectfully dissent.