UNITED STATES of America, Plaintiff–Appellee,

v.

Richard S. CUTLER, Defendant–Appellant.

No. 90–4070.

United States Court of Appeals, Tenth Circuit.

Nov. 6, 1991.

Craig S. Cook, Salt Lake City, Utah, for defendant-appellant.

Tena Campbell, Asst. U.S. Atty. (Dee Benson, U.S. Atty., and Stewart C. Walz, Asst. U.S. Atty., with her on the brief), Salt Lake City, Utah, for plaintiff-appellee.

Before McKAY, Chief Judge, SETH, Circuit Judge, and BROWN, District Judge.*

WESLEY E. BROWN, District Judge.

Defendant-appellant Richard Cutler was convicted by a jury on six counts of aiding and assisting in the preparation or presentation of false documents arising under the Internal Revenue laws (26 U.S.C. § 7206(2)). The counts against the defendant arose out of certain stock transactions with the Johnson–Bowles stock brokerage firm in Salt Lake City, Utah. The government alleged that the defendant willfully caused false statements to be included in "1099–B" forms that the brokerage firm prepared and was required to file with the Internal Revenue Service. The defendant contends that several errors on the part of the district court merit reversal of the convictions. We find no such error, however, and we therefore affirm the judgment of the district court.

The defendant opened an account at Johnson–Bowles in June of 1984. An ac-

---

* Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

count card containing the defendant's name, social security number, and other information was filled out either by the defendant or by his broker with information received from the defendant. It was Johnson–Bowles' routine practice to use the information obtained from a customer to compile an IRS form 1099–B, which reflected sale proceeds on stock transactions occurring in the customer's account. The firm was required by law to file such a form if it paid out proceeds on stock transactions over a certain amount. Johnson–Bowles' practice was to mail the form to the IRS at the end of the year and to mail a copy to the account holder indicating that the information had been provided to the IRS. The government introduced a customer copy of a 1099–B form in the defendant's name for the year 1984.

The government also produced new account cards from Johnson–Bowles in eight different names. The surnames on these accounts were: Shaw, Morrow, Murdock, Morris, Williams, Brown, Phelps, and Rice. These accounts were opened between April of 1984 and May of 1985. The address listed for each of these account holders except two was the same—2586 West South, Number 292. The government established that this address was a mailbox rented by the defendant in a fictitious name. The phone numbers listed on the form were not registered to the individuals named on the account cards. A check of the social security numbers listed on the account cards showed that, with the exception of one individual, the numbers were either issued to individuals other than those listed or had not been issued at all. The one exception was a Mr. Shaw. The social security number listed on the account card in his name was correct. The government called Mr. Shaw to testify, however, and he stated that he had not opened the account at Johnson–Bowles and had no knowledge of the matter. The fictitious information reflected on the account cards was incorporated by Johnson–Bowles into Form 1099–B's for each of these accounts when stocks were traded in the accounts. The government produced copies

of these 1099–B forms that had been retained by Johnson–Bowles.

The government called various bank employees from a local bank who testified that the defendant often cashed checks made payable to the eight account holders listed above. Over a thirteen-month period, the defendant negotiated over $465,-000.00 worth of checks arising from sales of stock in these accounts. The government established that the defendant endorsed the checks in the names of the various payees. The defendant declined to co-endorse the checks in his own name when asked to do so by bank employees. He told the bank tellers that he had a power of attorney to cash the checks on behalf of the payees. The tellers were directed to cash the checks by their supervisor, who was a friend of Mr. Cutler. An employee of the bank later told the defendant that the bank was unable to find a copy of the power of attorney to which he had referred. The defendant said he would provide the bank with another copy but he never did.

The defendant often negotiated the checks for a combination of large amounts of cash and cashiers' checks. On one occasion the defendant attempted to obtain more than $10,000 in cash. The bank teller informed him that such a transaction would require that the bank complete a "CTR," or currency transaction report. The defendant declined to go forward with that transaction and thereafter always asked for less than $10,000 in cash when he negotiated checks. The cashiers' checks he obtained were usually made payable to himself. The cashiers' checks were sometimes cashed by the defendant at other banks on the same day he obtained them, but were always cashed for under $10,000. The series of transactions at various banks support an inference that the defendant went to great lengths to avoid cashing a check for over $10,000. The defendant's income tax returns for the years 1984 and 1985 were filed in 1987. The returns showed that the defendant claimed the gain on some of these transactions as his own, while on others he reported only ten per cent of the gain and listed it as a commis-

sion. The gain on other transactions did not appear on the defendant's returns.

### I. *Filing of the 1099–B's.*

■ Appellant's first contention is that the conviction must be reversed because an essential element of the offense—filing of the false 1099–B forms with the IRS—was not shown by the evidence. Underlying this argument is the defendant's assertion that a tax document containing a false statement must be filed before it can be the basis for an offense under 18 U.S.C. § 7206(2). The government contends that there is no filing requirement under § 7206(2), or, alternatively, that sufficient circumstantial evidence was presented to show that the filing requirement was met.

Section 7206(2) of Title 26 provides:

7206. Fraud and false statements

"Any person who—

(2) Aid or assistance.—Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document;

shall be guilty of a felony...."

Section 7206(2) does not expressly mention filing as an element of the offense. The statute makes it unlawful for a person to willfully aid or assist in the "preparation or presentation" of a document under the tax laws that contains a materially false statement. In *United States v. Monteiro,* 871 F.2d 204 (1st Cir.1989), the First Circuit was presented with an issue similar to the one raised by appellant. In that case, Monteiro was charged under § 7206(2). The tax documents at issue in that case were IRS forms 1099 for the reporting of gambling income. Under the tax laws, dog and horse racing tracks were required to file 1099 forms disclosing payment to winners of wagers over a certain amount. The winner normally provided the necessary information when he or she cashed the winning tickets. The race track was responsible for filing the forms with the IRS. The indictment against Monteiro alleged that he was a "ten-percenter," meaning that for a ten per cent fee he arranged for individuals other than the actual winners to provide their name to the track and to sign the 1099 forms, thereby allowing the true winners to go undetected if they did not report the income on their tax returns. On appeal, Monteiro argued that the evidence was insufficient to support a conviction because the government did not show that the forms in question were filed with the IRS. The court of appeals conceded there was no such evidence but found this to be irrelevant. *Id.* at 210. The court assumed that "filing" was required under the statute but stated that such a requirement did not mean "receipt by the IRS" when an intermediary was involved. *Id.* The court concluded that "the offense of aiding or assisting the preparation or presentation of a false or fraudulent tax document is certainly complete when the document has been presented to a person or entity which is required by law to transmit the information thereon to the IRS." *Id.* at 210–11.

Appellant cites *United States v. Dahlstrom,* 713 F.2d 1423 (9th Cir.1983) to support his argument. In *Dahlstrom,* the Ninth circuit found that an offense was not committed under § 7206(2) unless and until the document containing the false statement was filed with the IRS. The court did not address the language of the statute, which appears to be aimed at the "preparation *or* presentation" of false documents. In reaching its conclusion, the *Dahlstrom* court relied on cases applying the statute of limitations, including *United States v. Habig,* 390 U.S. 222, 88 S.Ct. 926, 19 L.Ed.2d 1055 (1968), in which the Supreme Court indicated that an offense under § 7206(2) was committed at the time the return was filed. These cases were not concerned with the preparation of an informational return by an intermediary, however, and are therefore not controlling under the facts of this case. *See Monteiro,* 871 F.2d at 211. This case is similar to *Monteiro* in all material respects. The de-

fendant in this case willfully provided false information to an intermediary required by law to file an informational return pertaining to the defendant. Even assuming that "filing" of the tax form is required for an offense under § 7206(2), when a form relating to a taxpayer is required to be filed by an intermediary rather than the taxpayer, an offense under § 7206(2) is complete when the document or information has been presented to the entity required by law to transmit the information to the IRS.[1]

## II. *Sufficiency of the Evidence.*

Appellant also contends that the district court erred in denying his motion for judgment of acquittal on the grounds of insufficient evidence. This motion was made at the close of the government's case-in-chief and was renewed at the close of the defendant's case. Appellant believes there was an insufficient showing that he had a connection with the fictitious account cards at Johnson–Bowles and with the preparation of the false 1099–B's by Johnson–Bowles to sustain a conviction under § 7206(2).

In reviewing a challenge based on the sufficiency of the evidence, we must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309, 99 S.Ct. 2781, 2783–84, 61 L.Ed.2d 560 (1979) (emphasis in original). Where, as here, the defendant puts on evidence, the sufficiency of the evidence is to be determined by examining the entire record. *United States v. Bowie*, 892 F.2d 1494, 1496 (10th Cir.1990).

The government presented circumstantial evidence tying the defendant to the eight fictitious account cards and the resulting form 1099–B's for those accounts. Evidence was produced showing that the address listed on the cards was a mailbox rented by the defendant in a fictitious name. The mailbox was rented by the defendant the day after the first of these eight accounts was opened at Johnson–Bowles. There was evidence suggesting that the broker for these accounts, Steven Porter, and the defendant were acting together in trading stock in the eight accounts. Prior to the trial, Mr. Porter made a statement in which he admitted filling out the account cards. He further stated that he did so with information received from the people listed on the cards. The defendant admitted that he had discussed setting up the "nominee" accounts with Steven Porter prior to the date the accounts were opened. The defendant testified that he could not remember if he had come up with the fictitious names. It was Johnson–Bowles' practice to fill out the account cards from information obtained from the customer. The defendant was further connected with the accounts by his cashing of numerous checks made out to the fictitious names on the account cards. The defendant endorsed these checks by signing the names of the fictitious individuals. There was evidence suggesting that the defendant lied to bank officers to conceal the true nature of the transactions. Taken in the light most favorable to the government, the evidence in the record permits an inference that the defendant was the source of the fictitious information provided to Johnson–Bowles.

It is not necessary to show that the defendant himself prepared the false document in order to sustain a conviction under § 7206(2). Section 7206(2) prohibits willfully aiding or assisting in, procuring, counseling or advising the preparation or presentation of such a document. There was sufficient evidence presented to show that the defendant willfully aided or assisted in procuring, counseling or advising the preparation of false 1099–B forms by Johnson–Bowles. As noted above, the evidence

---

1. We note that in *Monteiro* the document itself was presented to the intermediary. In the instant case, the defendant provided the information to the intermediary that was used to compile the false 1099–B form. This distinction is not material, however, because the evidence was sufficient to allow the jury to conclude that the defendant willfully procured the preparation of a false form.

supported a conclusion that the defendant was the source of the false information found on the account cards. Indeed, the defendant admitted that he participated in providing some of the fictitious information found in the account cards, although he testified that he thought trading in a "nominee" account under an assumed name was proper. The evidence supports a conclusion that the defendant provided the false information with knowledge and intent that it be used by Johnson–Bowles in preparing 1099–B forms for the fictitious accounts. There was evidence that the defendant was aware that the customer information provided to the brokerage firm and records of the trades occurring in an account would in turn be provided to the IRS. Also, the defendant was not a novice in stock transactions; he was an experienced investor who had been trading stocks for over twenty years. The defendant's actions—by his own admission—were part of an attempt to conceal the identity of the true recipient of the stock proceeds in the eight accounts. The defendant's income tax returns for 1984 and 1985 showed that he reported some of the profits generated from these transactions as his own income. On many other transactions he declared only ten per cent of the gain and listed it as a commission and still other transactions were not reported by the defendant at all. Despite the defendant's apparent contention that he was merely acting as a broker on many of the trades in the eight accounts, the government showed that the defendant obtained the proceeds from most of the transactions. There was a conspicuous lack of accounting by the defendant as to the proceeds from these transactions. The jury may have inferred from the circumstances that the defendant willfully provided false information to Johnson–Bowles with the intent that it be incorporated in the 1099–B's, with the result being that the IRS would be unable to accurately trace the proceeds on stock transactions in the eight accounts.[2] When taken as a whole and viewed in the light most favorable to the government, a rational trier of fact could find the essential elements of the offense beyond a reasonable doubt.

### III. *Evidentiary Rulings and Jury Instructions.*

■ Appellant's next argument concerns various evidentiary rulings by the trial court. As appellant acknowledges, we review these rulings only for an abuse of discretion. *See United States v. Alexander*, 849 F.2d 1293, 1301 (10th Cir.1988). Appellant first argues that the district court allowed the jury to consider evidence that was irrelevant to the § 7206 counts against him. He contends that certain evidence admitted during the course of the trial was relevant only to the mail fraud and other counts against him. These other counts were dismissed by the district court at the close of the government's case on a motion for judgment of acquittal. We cannot say that the court erred in allowing the evidence referred to by appellant—concerning bank transactions, currency reports, and the defendant's tax returns—to be considered by the jury in determining the issues on the § 7206 counts. " 'Relevant evidence' means evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401 (emphasis added). The defendant's intent in formulating the "nominee" accounts was an issue in the case and the evidence cited by appellant can certainly be viewed as probative on that issue. The government was entitled to argue that the defendant's attempts to conceal the nature of the stock transactions indicated that he knew his actions were unlawful.

Appellant next contends that the district court erred in excluding evidence of the defendant's acquittal on a criminal charge involving state securities' laws. The dis-

---

2. We have not attempted to catalog all of the evidence and the inferences that support the jury's verdict. We note that as far as the defendant's intent was concerned, on cross-examination the defendant repeatedly stated that he could not remember details of many of the transactions at issue in the case. The weight to be given this testimony and the inferences to be drawn therefrom were matters for the jury to decide.

trict court refused to allow the defendant to introduce evidence showing that this charge was dismissed for lack of evidence. Appellant argues that the acquittal was appropriate to rebut a government assertion that appellant's late filing of his 1984 and 1985 tax returns was prompted only by the fact that he was under investigation and was evidence of willfulness on the § 7206(2) counts. In his brief, appellant argues that evidence of the acquittal was necessary to show that he was not under criminal investigation at the time he filed the 1984 and 1985 tax returns. The district court specifically ruled, however, that defense counsel could directly ask the investigator when the criminal investigation of Mr. Cutler ended. Tr. Vol. VII at 625. Defense counsel responded, "Well, that's not what I want to ask him." *Id.* Moreover, contrary to appellant's view of the evidence, the witness who testified on this matter indicated that the investigation of Mr. Cutler continued through 1987. Tr. Vol. VII at 622. We find no abuse of discretion in the district court's exclusion of evidence of the acquittal or in the manner in which the court supervised the questioning of the witness.

Appellant next contends that the trial judge erred in refusing to give two requested jury instructions relating to form 1099–B returns for "nominee" stock traders. Appellant argues that he was deprived of a defense by the failure to give these instructions. We disagree. The defendant's argument that he believed it was lawful to trade under fictitious names and to procure 1099–B's in those names is an argument that his conduct was not willful. The instructions submitted by appellant do not set forth the applicable law under § 7206(2). Rather, they amount to argument that the defendant did not have the intent to commit the offense. As such, the court was not required to give these instructions.

Appellant's final contention is that the district court erred in submitting the issue of materiality of the alleged false statements to the jury. It is settled in this circuit that the question of materiality un-

der § 7206 is a question of law for the court to decide. *See United States v. Larranaga,* 787 F.2d 489, 494 n. 1 (10th Cir. 1986) and *United States v. Strand,* 617 F.2d 571, 574 (10th Cir.1980). It is clear from a review of the record, however, that the district court submitted the issue of materiality to the jury at the behest of the defendant. Tr. Vol. VII at 782, 792. We therefore reject the defendant's request to overturn the convictions on this basis. "It is fundamental that 'a defendant cannot complain of error which he invited upon himself.'" *United States v. Taylor,* 828 F.2d 630, 633 (10th Cir.1987) (*citing United States v. Riebold,* 557 F.2d 697, 708 (10th Cir.), *cert. denied,* 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977)).

The judgment of the district court is AFFIRMED.