70 F.3d 1282
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Donald AUSTIN and James Grandgeorge, Defendants-Appellants.
 Nos. 92-1046, 92-1047.
 United States Court of Appeals, Tenth Circuit.
 Nov. 12, 1992.
 
 ORDER AND JUDGMENT[1]
 Before MOORE, TACHA and BRORBY, Circuit Judges.
 
 
 1
 Defendants Donald Austin and James Grandgeorge appeal from multicount convictions arising from a complex real estate fraud. Both were convicted of mail fraud, wire fraud, and making false statements in connection with this scheme. The essence of the scheme was to purchase properties from legitimate sellers and then divide each property into single family residences. Defendants recruited numerous people to act as "strawmen buyers" who secured mortgages from U.S. Mortgage Company which were, in turn, insured by the department of Housing and Urban Development. Despite HUD's requirement that each purchase be funded with a minimum 15% down payment by the purchaser, no such investment was made by the strawman. Closing documents were drawn, however, which falsely stated the down payments were made. Defendants paid the strawmen $1,000 for each of the transactions in which they participated. Although defendants assured the strawmen the defendants would be responsible for the payment of the loans on the properties, no such payments were made, and the properties went into foreclosure.
 
 
 2
 Defendants incorporated Fidelity Escrow Services which they used as an "independent" entity in connection with the sales transactions to give the transactions an appearance of legitimacy. The use of Fidelity convinced the loan closer on the strawmen purchases to believe the down payments were paid by the purchasers in cash or certified funds.
 
 
 3
 Defendants also arranged for all loans to be handled though U.S. Mortgage Company which was able to charge high interest rates because the purchasers had no real interest in the property. The high interest rates and the prospect of HUD insurance made the loans attractive to secondary lenders. The processing of the loans granted by U.S. Mortgage to the strawmen was done by three people who were paid "kick-backs" by the defendants.
 
 
 4
 Although defendants' scheme involved hundreds of properties, 157 were identified in the indictment. Government agents were unable to trace all of the fruits of these transactions, but a small portion was followed into other real property purchased by defendants through a series of transactions.
 
 
 5
 Based principally upon the defaulted loans, the district court determined the victims of this scheme lost more than $20,000,000. Under pre-guideline sentencing laws, the court sentenced Mr. Austin to a term of twenty-seven years and Mr. Grandgeorge to a term of twenty-three years. Each was given a sentence of five years' probation following release. In addition, the court imposed restitution in the amount of $12,618,772. This appeal followed.
 
 
 6
 Defendants raise a number of arguments relating to the denial of motions to strike surplusage, the sufficiency of the evidence, the propriety of instructions, and sentencing. We conclude there is no error and affirm.
 
 
 7
 Defendants argue the district court erred by failing to grant their motions to strike from the superseding indictment four pages of "introductory allegations" which were not supported by testimonial evidence. They maintain they were prejudiced because the statements contained in this introductory material filled gaps in the prosecution's case. We review rulings on motions to strike for abuse of discretion. United States v. Collins, 920 F.2d 619, 631 (10th Cir.1990), cert. denied, 111 S.Ct. 2022 (1991).
 
 
 8
 In Lowther v. United States, 455 F.2d 657 (10th Cir.), cert. denied, 409 U.S. 857 (1972), a matter in which a defendant claimed error because the district court refused to strike portions of an indictment which had no "testimonial relation" to the case, we held: The failure to strike certain portions of the Indictment was not prejudicial because of the Court's instructions that the Indictment was not evidence; that guilt or innocence was to be determined on the evidence; that the Government was not required to prove each aspect of the Indictment; and that a conviction could not be upheld on suspicion or conjecture. Id. at 666. The record is similar in this case. Here the district court instructed the jury that the indictment was not evidence; that the evidence consisted of only the sworn testimony, the exhibits, and stipulated facts; that the jury was to consider only the evidence; and that it would be a violation of the jury's "sworn duty" to consider anything but the evidence.
 
 
 9
 These instructions served to insure the contents of the indictment the defendants contend were surplusage were not considered by the jury in reaching its verdict. We conclude, therefore, the district court did not abuse its discretion by denying defendants' motions to strike.
 
 
 10
 Defendants next argue the evidence was insufficient to prove their guilt under 18 U.S.C. 1010 which prohibits, among other things, the making of a false statement in connection with a credit transaction offered to HUD for insurance. The government's case centered upon settlement statements, called HUD-1 forms, prepared and submitted in connection with the closing upon real property transactions. These settlement statements were used to obtain loans from U.S. Mortgage Company and then were offered to HUD for insurance. Line 303 of each statement showed the purchaser made a cash down payment, as required by HUD, but no such payment was actually made.
 
 
 11
 Defendants now contend line 303 is ambiguous, and does not actually state cash was transferred by the buyer at the time of closing. They argue, therefore, that the evidence of falsity is wanting.
 
 
 12
 Having reviewed the exhibits, we conclude the argument is specious. When the entire HUD-1 form is read in a light most favorable to the government, as it must be on appeal, and when line 303 is placed in the context of the entire document, the settlement statement clearly purports to represent a cash payment was made at the time of closing by the buyer. United States v. Sasser, 971 F.2d 470, 476 (10th Cir.1992). Even though the defendants suggested to the jury that line 303 is ambiguous, a rational jury, viewing the entire document and the inferences that could be drawn therefrom, could reject the suggestion of ambiguity, reasonably determine the documents contained a false statement, see United States v. Levine, 970 F.2d 681, 684 (10th Cir.), cert. denied, --- S.Ct. ----, No. 92-5614, 1992 WL 227478 (U.S. Oct. 5, 1992); United States v. Cutler, 948 F.2d 691, 695 (10th Cir.1991), and find the defendants guilty of a false statement under 18 U.S.C. 1010.[2]
 
 
 13
 The defendants argue the evidence was insufficient to sustain the charges of mail fraud. Their premise is that the mailings upon which the charges were predicated--mailing of warranty deeds, deeds of trust, title insurance policies, and hazard insurance policies--did not further the fraudulent scheme. We disagree. This issue is reviewed to determine whether, after examining the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. United States v. Hollis, 971 F.2d 1441, 1447 (10th Cir.1992).
 
 
 14
 The government's burden in this case was to prove the mails were used "for the purpose of executing" the fraudulent scheme, Id. (quoting 18 U.S.C. 1341). This requires a showing that the mails were used as a part of the execution of the fraud, but to satisfy this requirement, the government need not show the use of the mails was "an essential part of the scheme." Id. at 1448 (quoting Schmuck v. United States, 489 U.S. 705, 709-11 (1989)).
 
 
 15
 The warranty deeds which provided the basis of counts 1 through 11 were used to transfer title to the strawmen buyers. The mailing was to county clerks to effect recording and to Fidelity Escrow Properties following recording. The deeds were a required part of the closing and essential to the culmination of the loan transactions. The deeds were also essential to create the appearance of legitimacy to HUD. Moreover, without the delivery and recording of the deeds, the mortgage company would have become suspicious of the validity of the transactions, and the cooperation of the title company, essential to the entire scheme, would have been compromised. We conclude, therefore, the mailing of the warranty deeds was part of the execution of the fraud.
 
 
 16
 The mailings of the deeds of trust charged in counts 29 through 33 were mailings of recorded deeds of trust from county clerks to U.S. Mortgage Company. Although U.S. Mortgage Company provided the initial funding for each transaction, it obtained the money to do so from an outside source, incurring a debt from U.S. Mortgage to that source. It was, therefore, essential for U.S. Mortgage Company to broker each loan to a secondary lender so that U.S. Mortgage could obtain funds to pay its lender. The loan purchase agreement through which this secondary loan was obtained required a recorded deed of trust for each property. Therefore, in addition to adding the appearance of legitimacy to the transaction, the mailing of the recorded deeds of trust to U.S. Mortgage was a step without which the ultimate scheme could not have been accomplished.
 
 
 17
 The title insurance policies which provided the basis for counts 23 through 28 were mailed from Security Title Guaranty Company to a named strawman buyer. U.S. Mortgage Company required the creation of a title policy for each of its mortgage loans because each of its loan purchase agreements with the secondary financier required proof of clear title. Again, the mailing of the title insurance policy was a vital step in the ultimate scheme.
 
 
 18
 The hazard insurance policies and premium checks which were the basis of counts 12 through 22 were mailed to either State Farm Insurance Company's or Allstate Insurance Company's local or regional offices. U.S. Mortgage Company required hazard insurance on each property it financed, and the HUD-1 settlement statement provided information for the payment of the premium as part of the closing costs. Thus, the mailing of the insurance premiums and the policies were incident to the entire scheme.
 
 
 19
 Mr. Austin contends the wire transfers of funds from the secondary lenders to U.S. Mortgage Company which formed the basis of wire fraud charges were not incidental to the scheme to defraud. He argues because the jury acquitted codefendant John LaGuardia, the president and owner of U.S. Mortgage, Mr. LaGuardia was not a "co-schemer" by definition. Thus, defendant maintains, the wire transfers made to U.S. Mortgage could not have been an incident to fraud. We review this argument under the same standard applied to review of the sufficiency of the evidence of mail fraud.
 
 
 20
 Mr. Austin's position minimizes the significance of the secondary loans without which U.S. Mortgage would have been unable to fund the loans for the individual transactions. Thus, whether Mr. LaGuardia was a "co-schemer" is not relevant to the issue of whether the wire transfers themselves were incidental to the fraud.
 
 
 21
 In this context, the government did not have to prove the secondary loans actually made were the only source of funds to U.S. Mortgage, as defendant implies. It was sufficient to show that the secondary loans provided U.S. Mortgage with the resources necessary to pay its lenders and that payment of those lenders was incidental to the overall scheme.
 
 
 22
 Mr. Grandgeorge argues instruction 26, given over his objection, incorrectly stated the law and misled the jury. He contends the instruction permitted the jury to find him guilty of the 1010 false statement charges without a showing that he directly participated in the making of the HUD-1 form which provided the basis of the offense. We review the legal sufficiency of instructions de novo, United States v. Barrera-Gonzales, 952 F.2d 1269, 1271 (10th Cir.1992), but in doing so, we "review the record as a whole to determine whether the instructions stated the governing law and provided the jury with ample understanding of the issues and standards applicable." Id. (citing Big Horn Coal Co. v. Commonwealth Edison Co., 852 F.2d 1259 (10th Cir.1988)). Reversal of a conviction based on an instruction is required only if we have a substantial doubt whether the jury was fairly guided in its deliberations. United States v. Willis, 890 F.2d 1099, 1105 (10th Cir.1989).
 
 
 23
 The aspect of instruction 26 about which Mr. Grandgeorge complains is that which advised the jury: "the government need not prove that the defendant personally made or physically wrote the statement." Defendant argues this instruction is contrary to the language of 18 U.S.C. 1010 because that section "clearly states that one of the elements of making a false statement is that the defendant made, passed, published or uttered the statement set forth." No authority is cited in support of this argument.
 
 
 24
 The government's theory of prosecution was not predicated upon the direct actions of Mr. Grandgeorge, but rather upon his actions in aiding and abetting the commission of the offense. Thus, the trial court instructed on the elements of aiding and abetting, including the fact the offense can be committed by knowingly causing a statement to be made. That instruction is consistent with the law holding evidence of aiding and abetting the making of a false statement is sufficient upon a showing that the defendant either made the false statements or caused them to be made. Sasser, 971 F.2d at 476. We see no error in the instructions and do not believe the jury was misled.
 
 
 25
 Defendant Grandgeorge, in a rather prolix and somewhat confused argument, seems to contend the district court erred in both the length of its sentence to confinement and in the calculation of the amount of restitution. Mr. Grandgeorge argues the trial court improperly considered an "unfounded" allegation that he had hidden assets as a partial basis for the calculation of his sentence. In consideration of these arguments, it must be clear that because these were pre-guideline offenses, the defendants were not sentenced under the United States Sentencing Commission Guidelines. Nonetheless, the district court used the guidelines as an aid in arriving at appropriate sentences. Regardless, prior to the enactment of the Sentencing Reform Act of 1984 and under pre-guideline sentencing practices, appellate courts generally had no authority to review the length of a sentence. United States v. Brown, 784 F.2d 1033, 1039 (10th Cir.1986); Vasquez v. Cooper, 862 F.2d 250, 254 (10th Cir.1988). Moreover, sentences were regarded as lawful so long as they were within the statutory limits. Brown, 784 F.2d at 1039. Because defendants do not contend the court exceeded the statutory limit in the sentences it imposed, we decline to consider any argument about their length.
 
 
 26
 To the extent Mr. Grandgeorge contests the amount of restitution determined by the district court pursuant to the provisions of the Victim Witness Protection Act (formerly 18 U.S.C. 3579), our review of the court's decision to impose restitution is confined to an abuse of discretion standard. United States v. Richard, 738 F.2d 1120, 1122 (10th Cir.1984). In the process of review, we grant substantial deference to the determination of the district judge. Id. We review the district court's factual findings relative to the amount of restitution on a clearly erroneous standard. United States v. Rogat, 924 F.2d 983, 984-85 (10th Cir.), cert. denied, 111 S.Ct. 1637 (1991). Applying these standards, we see neither an abuse of discretion nor a clearly erroneous determination of fact.
 
 
 27
 The district court chose to base its imposition of restitution upon the amount of the net value of the loss suffered by the victims calculated by the total outstanding loan amounts plus costs, less any amounts the victims recovered or could recover from the sale of collateral. That calculation is sound, and we accord it the substantial deference to which it is entitled. Moreover, we disagree with the defendant that United States v. Cook, 952 F.2d 1262 (10th Cir.1991), mandates a different result.
 
 
 28
 In Cook, we held the district court's power to award restitution was confined to the charges of conviction. Id. at 1265. There is no indication here that the district court's award crossed that boundary.
 
 
 29
 Finally, Mr. Austin contends the district court erred in imposing restitution upon him because there was no proof of his ability to pay. Viewing the court's findings upon a clearly erroneous standard, we find no error.
 
 
 30
 The statute upon which the findings were made provided: Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence.... The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and such defendant's dependents shall be on the defendant. 18 U.S.C. 3580(d), repealed by Pub.L. No. 98-473, 98 Stat.1987. Thus, the burden fell upon Mr. Austin to prove by a preponderance of evidence that he was, as he claimed, destitute and unable to pay restitution. He chose to do little to carry this burden except to stand on his attorney's allocution at the time of sentencing. Moreover, prior to sentencing, the court offered Mr. Austin opportunity to address it directly and refute the government's evidence. He declined the invitation.
 
 
 31
 Although the government offered exhibits and affidavits tending to show the disposition of the proceeds of this scheme, Mr. Austin simply stood upon his claim that he had no funds. It is then no wonder that the district judge observed, "I also think it is very highly likely, extremely probable, that you do have money and properties out there that you have not revealed to the Government, are not interested in revealing." We, therefore, conclude that not only did Mr. Austin fail to carry his burden, but he also did not refute the evidence presented by the government. Under those circumstances, we cannot say the district court's finding was clearly erroneous.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 Defendant Austin argues that the government "failed to provide any evidence of a HUD rule requiring a cash down-payment." Our review of the record disclosed the testimony of three witnesses who stated HUD had a rule which required a 15% cash down payment, one who stated the rule required a 15-20% down payment and a fifth who simply stated HUD required a cash down payment