---

Clarence Butler, Jr., Asst. U.S. Atty., Dyer, IN, for plaintiff.

Patrick A. Tuite, Tuite, Stratton and Menaker, Chicago, IL, Richard F. James, Luke A. Casson, James, James and Manning PC, Dyer, IN, for defendant.

UNITED STATES of America

v.

Gregory MUNTEAN.

No. 2:94 CR 27 JM.

United States District Court, N.D. Indiana, Hammond Division.

Nov. 21, 1994.

## ORDER

MOODY, District Judge.

On April 28, 1994, defendant Muntean pleaded guilty to a violation of the National Firearms Act, 26 U.S.C. §§ 5801–5872, specifically, to the making of "a false entry on any application, return, or record required by this chapter, knowing such entry to be false." 26 U.S.C. § 5861($l$). Defendant has now moved to vacate his guilty plea, arguing that his conduct did not constitute the offense circumscribed by the statute.

Muntean wanted to buy a machine gun. Under regulations established by the Bureau of Alcohol, Tobacco and Firearms ("ATF"), the seller ("transferor") of a machine gun (and other firearms as defined by the regulations) must obtain prior approval of the transfer by submitting a "Form 4 (Firearms), Application for Transfer and Registration of Firearm" ("Form 4") to ATF and paying a transfer tax. 27 C.F.R. §§ 179.66, 179.84. If the buyer ("transferee") is an individual

---

who is not qualified under the regulations as a "manufacturer, importer or dealer" of firearms, then the transferee must attach his fingerprints and photo to the application, and the chief local law enforcement officer must certify that the photo and fingerprints are in fact the transferee's and that his possession of the firearm will not place him in violation of state or local law. 27 C.F.R. §§ 179.84, 179.85.

The transferor of the firearm is charged with the duty of filing the Form 4 with the Director of ATF. The regulations do not specify the mechanical procedures for carrying out the steps described in the preceding paragraph: *e.g.*, the regulations do not explain whether the transferor should obtain the transferee's fingerprints and photo and then obtain the necessary police certification, or whether the transferor may give the transferee the form, and, after the certification is completed, either get the form back for sending to the ATF or allow the transferee to do so.

In the present case, however, the Form 4 used (version 5230.4, 7–88, a copy of which Muntean attached to his motion) gives some direction: it requires the transferee to sign the Form 4 in the presence of the local law enforcement officer who is making the required certification.[1] Thus, the transferee obviously is involved in delivery of the form to the police: whether he does so alone is an unanswered question. Perhaps a prudent transferor is always also present, to be sure that the transferee actually obtains the certi-

fication of the chief local law enforcement officer, rather than forging it.

Muntean signed the Form 4 on February 7, 1994, swearing under penalty of perjury that he believed the information therein to be true and correct. In fact, the Form 4 did not contain his true residential address. On February 23, 1994, in a letter hand-delivered to Munster, Indiana, Chief of Police William Sudbury, Muntean (who had more than one request for certification pending at the time) wrote that he "would respectfully exercise my prerogative to withdraw such applications from your consideration. I do not wish those applications to be processed." The certification was not completed, and the Form 4 was never sent to ATF.

Muntean contends that the offense of making a false statement on an application necessarily requires that the application be submitted to the party requiring the application: until that time, it is simply an application **form,** not an application. Because the Form 4 in question was never submitted to ATF, Muntean never made a false statement on an "application" as that term is used in the statute. As there are no cases that so hold, Muntean argues by analogy, comparing his situation to that of an individual who fills out his federal income tax return—fraudulently—signs it, seals it and stamps it, but, thinking the better of his actions, never mails it. No false return has been filed, so no law has been broken.[2]

The government rejects the analogy.[3] First, the government argues that § 5861(*l*)

---

[1] A cursory examination of the form raises more questions than it answers. The pre-printed certification language provided for the chief local law enforcement officer contains no mention that the officer is "satisfied that the fingerprints and photograph accompanying the application" are the transferee's, as required by 27 C.F.R. § 179.85. Even if it did, how the officer could do so is another question since the Form requires the transferee to "submit, in duplicate, (to the transferor) two completed copies of FBI FD–258, Fingerprint Card." [Query: is "in duplicate . . . two completed copies" two copies or four copies?] If the transferor has the fingerprints while the officer has the form, it would seem impossible for there to be compliance with § 179.85.

[2] A number of cases describe the elements of a violation of 26 U.S.C. § 7206(1) as requiring the government to prove that the defendant *filed* a

return containing a material falsity. *See, e.g., United States v. Hanson,* 2 F.3d 942, 945 (9th Cir.1993). In its response to Muntean's motion, the government admits that a tax return must be filed for there to be a violation.

[3] The government fared no better in its search for relevant case law than Muntean. The government found two cases involving § 5861(*l*), *United States v. Fleming,* 19 F.3d 1325 (10th Cir.1994), and *United States v. Ardoin,* 19 F.3d 177 (5th Cir.1994). Although the government strains to analogize these cases to the present circumstances, the court finds them not at all helpful. Neither addresses the issue Muntean raises, because in both cases the applications in issue were filed with ATF. As the necessity of filing is Muntean's issue, this is no little distinction.

contains no requirement that the application be filed, it merely requires a false statement on an application. In the government's view, a Form 4 is **always** an application, and making a false entry thereon is an immediate statutory violation. If this interpretation of the statute is correct, an individual who uses a blank Form 4 as a doodle-pad and on it writes "I am Superman" violates the statute. This absurdity suggests either that Muntean's position has some validity, or the government's very little.

Recognizing this, the government has filed a second response[4] in which it argues that at the very least a Form 4 is an application when it is turned over to local law enforcement for certification. The government explains that firearm registration is a comprehensive process designed to ensure that ATF obtains accurate information. Obtaining local law enforcement certification is an important step in this process. Therefore, Muntean's submission of a Form 4 containing false information to the Munster Police Chief was detrimental to that process and violated the statute.

This second argument has more appeal than the first, but the government's explanation why a Form 4 becomes a statutory "application" when submitted to local law authorities is not entirely convincing. The certification procedure imposes no duty on local law enforcement to transmit the Form 4, or any information, to ATF.[5] Suppose a transferee obtains the required certification but, having thought the better of submitting a false application to ATF, destroys the Form 4. The integrity of ATF's record system has not been compromised, so the government's rationale collapses. This hypothetical arguably describes an attempted violation, but not the completed offense.

None of this is to say that the court accepts Muntean's interpretation of § 5861(*l*) as requiring that a Form 4 reach ATF before

it be considered an application. This interpretation would introduce an unnecessary opportunity for "moral luck" to dictate the outcome. While "moral luck" is a philosophical conceit that informs the law, *United States v. Martinez*, 16 F.3d 202, 206 (7th Cir.1994), it need not evolve into a rule of statutory construction requiring an element of fortuity in every offense.[6]

To explain, consider a firearm transferee engaging in two transactions, one with transferor A and one with transferor B. The transferee, after making a false statement on each Form 4, obtains the necessary law enforcement certifications and returns each Form to the respective transferor on Monday afternoon. On Tuesday morning the transferee has a change of heart and phones each transferor, telling him not to send the form to ATF. Transferor A destroys the Form; transferor B tells transferee it has already been mailed.

If Muntean's interpretation of § 5861(*l*) is adopted, the transferee commits the offense in the transaction with B but not in the transaction with A. "Moral luck" is the term describing the different outcomes. In both cases, however, the transferee's conduct is identical. Because the statute does not expressly require the application to be filed with ATF, and, moreover, because the transferee has done all that the statute (and regulations thereto) require of him, the difference—logical only if the Form 4 has to be filed with ATF to be an "application"—makes little sense. At the same time, "application" loses its ordinary meaning unless some act of "applying" takes place. The question is when, from the transferee's perspective, it can fairly be said that an application has been made.

In both of the hypothetical transactions just described, there is a principled reason to say that the transferee has applied. In each case the transferee has delivered a finished

---

4. A filing not usually made or allowed in this court—a response to Muntean's reply to its first response. Muntean has not objected to the filing, however.

5. The court says this despite the government's unsupported argument that "the submission of an application to the Munster Police Department

is merely a means of transmitting information to the ATF." If the court has misunderstood the registration process and/or the regulations, it will welcome a motion for reconsideration.

6. The chance of the violation escaping detection, always inherent, is fortuity enough.

(from the transferee's point of view) Form 4 to the individual with the duty to transmit the form to ATF. Because the transferee's conduct is complete, so is the offense, and the subsequent attempt at abandonment comes too late. In other words, whether the transferor has transmitted the application to ATF or not, an event beyond the transferee's control, is irrelevant to the transferee's liability.

This approach to interpreting § 5861 has at least one advantage over the parties': two cases regarding the filing of tax returns—Muntean's chosen analogy—take the same view. The defendants in *United States v. Cutler*, 948 F.2d 691 (10th Cir.1991) and *United States v. Monteiro*, 871 F.2d 204 (1st Cir.1989) were charged with violations of 26 U.S.C. § 7206(2), aiding or assisting in the preparation of false tax returns, and both made Muntean's argument: no filing, no offense.

Cutler had given false information to his stock brokerage firm which it used to complete "1099–B" forms the brokerage was required to file with the IRS. *Cutler*, 948 F.2d at 692. Monteiro had arranged for individuals other than the true winners to fill out "1099" forms which dog and horse racing tracks must file on large gambling winnings. *Monteiro*, 871 F.2d at 206–07. In each case the defendant contended the government had not proved an essential element of the offense, actual filing of the forms with the IRS. *Cutler*, 948 F.2d at 694; *Monteiro*, 871 F.2d at 209.

In each case the court observed that § 7206(2) [like § 5861(l) in the present case] contains no express requirement that a fraudulent form actually be filed, but assumed, arguendo, that requirement to exist. *Cutler*, 948 F.2d at 694; *Monteiro*, 871 F.2d at 209. Lacking proof of the IRS' receipt of the forms in issue, the courts nevertheless found the filing requirement met when the forms were presented to the entity with the legal responsibility for filing. *Cutler*, 948 F.2d at 695; *Monteiro*, 871 F.2d at 210. As explained in *Monteiro*:

Although, on the evidence presented, we do not know whether the IRS ever received the fraudulent information in the normal course, we find this lacuna irrelevant to our decision because we do not equate "filing" with "receipt by the IRS" in a situation involving an intermediary.... Appellant, [and his cohorts] Rogers, and Calio had done all that was possible for them to do to perpetrate this fraud. No further steps were necessary because the payor of the income (here, the racetrack) was to transmit the information by filing a report of payments with the IRS. Appellant's liability for aiding the preparation of fraudulent tax documents accrued at this point—when fraudulent documents were submitted to the intermediary with the intention that the racetrack accept as true the information provided. The action or inaction of the intermediary can be of no consequence to appellant's liability.

*Id.*

As the trial court in the present case, the luxury of assuming the existence of a filing requirement arguendo is not an option. The court holds that § 5861(l) does require a filing. This conclusion derives from the ordinary meaning of the word "application," rather than the rule of lenity. *Cf. Staples v. United States*, —— U.S. ——, —— n. 17, 114 S.Ct. 1793, 1804 n. 17, 128 L.Ed.2d 608, 625 n. 17 (1994). A transferee "files" so as to meet the requirement when he completes his portion of the document and relinquishes control, placing the document in the hands of the intermediary who will file it.

From the facts known to the court at this time, it is unclear whether this element has been shown. Who had control of the Form 4 and delivered it to the Munster Police Chief, Muntean or the seller of the machine gun? If Muntean, was the Chief to return the form to him, to the seller, or directly to ATF? The answers to these (and perhaps other) questions determine whether Muntean's conduct was sufficient to constitute the offense charged. Because the answers to these questions are unknown (at least, the court does not recall these issues being resolved at Muntean's change of plea hearing), there is an insufficient factual basis to accept Muntean's guilty plea. Accordingly, his motion to vacate his plea is **GRANTED,** and a plea of not guilty entered. A final pretrial conference will be held Thursday, January 12, 1995

at 9:00 a.m. Jury trial is set for Monday, January 23, 1995 as a secondary criminal setting.

**SO ORDERED.**